UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAMROCK FISHERIES, LLC, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) No. 21-cv-10689-ADB |
| MARK C. MANNING, *et al.*, | ) |
| Defendants, | ) |
| and | ) |
| HON. LLOYD MacDONALD, | ) |
| Nominal Defendant. | ) |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION

Defendants Mark C. Manning, Robert J. Bocko, and Steven L. Weeks, arbitrators serving on a panel in an American Arbitration Association ("AAA") administered arbitration to which Plaintiff Quinn Entities[1] have just been made parties ("Panelists"), hereby oppose Plaintiffs' Emergency Motion for a Preliminary Injunction. The Court should deny the Motion because Plaintiffs cannot show *any* of the required elements necessary for a preliminary injunction, to wit:

---

[1] Plaintiffs are Shamrock Fisheries, LLC, Mariner Fisheries, LLC, Seafarer Fisheries, LLC, Cynbel Fisheries LLC, Torbay Fisheries, LLC, Galway Fisheries, LLC, and Quinn Fisheries, LLC ("Quinn Entities") and Blue Harvest Fisheries LLC ("Blue Harvest"). On May 3, 2021, the Massachusetts Superior Court for Suffolk County (Salinger, *J.*) ordered the Plaintiff Quinn Entities to participate as parties to the arbitration. See Memorandum and Order Allowing Defendant's Petition to Compel Arbitration ("Superior Court Order"), attached as Exhibit 1 hereto; see also footnote 4.

1

1) Plaintiffs cannot show a likelihood of success on the merits of their case because: a) arbitral immunity absolutely shields the Panelists from this lawsuit; b) the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), and the Massachusetts Uniform Arbitration Act for Commercial Disputes, Mass. Gen. L. c. 251, § 1 et seq. ("UAA"), are the exclusive means for modifying or vacating an arbitration award and, therefore, Plaintiffs state no viable claim for "Declaratory Judgment;" and c) Plaintiffs have not shown that this Court has personal jurisdiction over the Panelists;[2/]

2) Because their lawsuit is brought solely to enable a financial transaction the Interim Award at issue ostensibly prevents, Plaintiffs cannot demonstrate irreparable harm;

3) Plaintiffs' proposed injunction improperly seeks to alter the status quo and is untimely, brought some 16 months after issuance of the Interim Award at issue; and

4) Plaintiffs cannot show that equities weigh in their favor or that an injunction is in the public interest.

For these reasons, explicated below, the Court should deny Plaintiffs' Motion.

## RELEVANT BACKGROUND FACTS [3/]

On September 19, 2019, BASE, Inc. ("BASE") initiated arbitration proceedings against Rafael Companies ("Rafael") and VII Northeast Fishery Sector, Inc., alleging, among other things, that Rafael violated the terms of an agreement when it contracted to sell certain assets to Plaintiff Quinn Entities. See Verified Complaint for Preliminary and Injunction Relief

---

[2/] For these same three reasons, the Panelists are separately filing a motion to dismiss Plaintiffs' case.

[3/] Although the facts necessary to understand the dispute underlying this case are complex and extensive (as illustrated by Plaintiffs' 350-plus pages of Complaint and attachments), the facts necessary for the Court to resolve Plaintiff's Motion are not. The Superior Court Order (Exh. 1) provides more detailed summary of the underlying dispute than necessary here.

("Complaint") at ¶¶ 87-89; Exh. O. BASE and Rafael selected Defendant Panelists to serve as arbitrators in the arbitration ultiamtely administered by the AAA. See Complaint at ¶¶ 10-12, 22.

After the arbitration was initiated, Rafael completed the sale to Quinn Entities. Complaint at ¶¶ 64-70. On October 25, 2019, the Panelists issued an Interim Award prohibiting Rafael from further selling or changing the status of any of its assets. Id. at ¶ 26; Exh. C; see also, Interim Award at ¶¶ 3(a)-(f), a fully executed and more legible copy of which is attached hereto as Exhibit 2. This Interim Award included a directive that Rafael instruct any agents or trustees to also cease such activities. See Exh. 2 at ¶ 3(d). Plaintiff Quinn Entities allege that they presently hold assets that are subject to mortgages and security interests of the Nominal Defendant, the Trustee of a settlement trust established for Rafael. See Complaint at ¶ 13.

Thereafter, the Quinn Entities[4] filed suit in Massachusetts Superior Court, seeking a declaration that it was not bound to arbitrate with BASE, which had moved to include the Quinn Entities in the arbitration. See Superior Court Order (Exh. 1) at 1. As part of that suit, BASE petitioned the Superior Court for an order compelling the Quinn Entities to participate as parties in the arbitration. Id.

By Complaint and Motion for Emergency Preliminary Injunction dated April 19, 2021, Plaintiffs sued the Panelists in Massachusetts Superior Court, challenging the scope and reach of the Interim Award. See Complaint at ¶¶ 96-101. According to the Complaint, Plaintiffs – Quinn Entities on the one hand and Blue Harvest on the other – are negotiating a transfer of the assets encumbered by the Trustee's security interest. Id. at ¶ 16-22. According to Plaintiffs, "the

---

[4] Though seven of the Quinn Entities that are Plaintiffs in this case are the same as those that served as plaintiffs in the Superior Court suit, the eighth is different. Compare Complaint at 1 (showing eighth Plaintiff as "Quinn Fisheries, Inc.") with Superior Court Order (Exh. 1) at 1 n.1 (showing eighth plaintiff as "Bill and Eileen LLC").

Trustee seeks guidance from the Court before approving the substitution of collateral," which would enable the Quinn Entities and Blue Harvest to complete their transaction. Id. at ¶ 22.

On April 26, 20201, the Panelists removed the case to this Court. That same day, the Emergency Judge (Saris, *J*.) allowed the Panelists until May 10, 2021 to oppose Plaintiffs' Motion. Finally, on May 3, 2021, the Superior Court (Salinger, *J*.) allowed BASE's petition to compel arbitration, making the Quinn Entities parties to the underlying arbitration. See Superior Court Order (Exh. 1).

For the reasons that follow, the Court should deny the Plaintiff's Motion and/or, in light of the Panelists' motion to dismiss, filed herewith, dismiss the Complaint in full.

## **ARGUMENT**

### I.      **LEGAL STANDARDS FOR A PRELIMINARY INJUNCTION.**

Preliminary injunctive relief "is an 'extraordinary and drastic remedy.'" Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). "The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 48 F.3d 618, 620 (1st Cir. 1995) (citing Chalk v. United States Dist. Court, 840 F.2d 701, 704 (9th Cir. 1988); American Hosp. Ass'n v. Harris, 625 F.2d 1328, 1330 (7th Cir. 1980)).

To obtain a preliminary injunction, the Court must consider: (1) the movant's likelihood of success on the merits; (2) the risk of the movant suffering irreparable harm in the absence of injunctive relief; (3) the balance of equities; and (4) whether granting the injunction is in the public interest. Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). The First Circuit's

"construction of the preliminary injunction framework…makes pellucid that the sine qua non of a preliminary injunction is the movant's ability to show that it is likely to succeed on the merits of its claims." Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 93 (1st Cir. 2020). "In the ordinary course, plaintiffs who are unable to convince the trial court that they will probably succeed on the merits will not obtain interim injunctive relief." Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) (citation omitted).

Therefore, the Court need not evaluate irreparable harm, equitable factors, or public interest considerations if the movant fails to establish a likelihood of success. See, e.g., Nasar Jewelers, Inc. v. City of Concord, 513 F.3d 27, 37 (1st Cir. 2008) ("Since [the plaintiff] has no probability of success on the merits of its claim, we need not address the other factors in the preliminary injunction determination."). Should the Court nevertheless address all of the preliminary injunction factors, the movant "bears the burden of establishing that these four factors weigh in [its] favor." Esso Standard Oil Co.(P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

**II.  PLAINTIFFS CANNOT MEET ANY OF THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION.**

  **A.  Plaintiffs Cannot Show A Likelihood Of Success On The Merits Of Their Claim.**

   **1.  Arbitral immunity precludes Plaintiffs' suit against the Panelists.**

Plaintiffs' claim for declaratory judgment first fails because they improperly attempt to sue the individual arbitrators presiding over a pending arbitration (to which Plaintiffs were not parties at the time of filing, but now are (see Superior Court Order (Exh. 1)) to attack the Interim Awards the arbitrators have issued therein. It is well-settled that arbitrators are entitled to the same immunity granted to judges. See, e.g., Butz v. Economou, 438 U.S. 478, 513 (1978)

(holding that absolute judicial immunity extends to those whose powers or purposes are "functionally comparable to that of a judge"); New England Cleaning Services, Inc. v. AAA, 199 F.3d 542, 545 (1st Cir. 1999) ("Because an arbitrator's role is functionally equivalent to a judge's role, courts of appeals have uniformly extended judicial and quasi-judicial immunity to arbitrators."). "Every. . .circuit that has considered the issue of arbitral immunity recognizes the doctrine." Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith, 477 F.3d 1155, 1158-59 (10th Cir. 2007) (collecting cases).

> Judicial and arbitral immunity are necessary for the same reasons:
>
> The functional comparability of the arbitrators' decision-making process and judgments to those of judges. . .generates the same need for independent judgment, free from the threat of lawsuits. [Arbitral] immunity furthers this need [and] is essential to protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants.

Austern v. Chicago Board Options Exchange, Inc., 898 F.2d 882, 886 (2nd Cir. 1990), (citing Corey v. New York Stock Exchange, 691 F.2d 1205, 1211 (6th Cir. 1982)); see also, New England Cleaning, 199 F.3d at 545 ("As with judicial and quasi-judicial immunity, arbitral immunity is essential to protect decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants."). For these reasons, the longstanding rule is "that arbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability in damages for all acts within the scope of the arbitral process." Austern, 898 F.2d at 886; see also Olson v. National Ass'n of Securities Dealers, 85 F.3d 381, 383 (8th Cir. 1996) (arbitral immunity protects "all acts within the scope of the arbitral process," even if arbitrator fails to follow own internal rules); Lanza v. Fin. Indus. Regul. Auth., 347 F. Supp. 3d 104, 105 (D. Mass. 2018), aff'd, 953 F.3d 159 (1st Cir. 2020) ("the arbitrators' decision to issue an award without a reasoned decision is an administrative task integrally related to the arbitration and thus

protected by arbitral immunity.").

Indeed, courts consistently recognize an important, related policy reason for arbitral immunity: the AAA and its arbitrators are not proper parties to any dispute involving an arbitration because they have no interest in the outcome. See, e.g., Aberele Hosiery Co. v. AAA, 337 F. Supp. 90, 92 (E.D. Pa.), app. dismissed, 461 F.2d 1005 (3rd Cir. 1972) (AAA held to be an unnecessary party to action); System Federation No. 30, Railway Emp. Dept. AFL-CIO v. Braidwood, 284 F. Supp. 607, 610 (N.D. Ill. 1968) ("[T]he parties in court should be the same as those before the agency. The analogy is to appellate review of trial court judgments, where the appellant names his opponent below as the appellee rather than the trial judge").

Here, arbitral immunity absolutely precludes Plaintiffs' case against the Panelists, eliminating any likelihood that Plaintiffs will succeed on their claim. All of the conduct about which Plaintiffs complain falls squarely within the Panelists' duties as arbitrators within the scope of the arbitral process, specifically, their issuance of the Interim Award in the arbitration before them (to which Plaintiff Quinn Entities are now parties) and its ostensible prevention of the pending Quinn Entities-Blue Harvest transaction. See Complaint at ¶¶ 27-28; Exhs. B and C. Indeed, Plaintiffs' Proposed Order from this Court directly seeks to overturn the Interim Award to the extent that it is "interfering with the Trustee's exercise of his fiduciary duties." Proposed Order at ¶ 1.

In short, in directly challenging the Panelists' arbitral authority – the substance and reach of the Interim Award issued in an arbitration before them – Plaintiffs' lawsuit is precluded by arbitral immunity. This is all the more apparent now that the Quinn Entities have been compelled to participate in the arbitration, in which they can directly pursue all arguments regarding the

7

propriety, or lack thereof, of the Interim Award. Plaintiffs cannot meet the paramount element necessary for a preliminary injunction – likelihood of success on the merits.

### 2. Plaintiffs state no viable cause of action against the Panelists.

No injunction should issue for a reason closely related to arbitral immunity: Plaintiffs state no legally viable cause of action against the Panelists. Most clearly, Plaintiffs' suit is an improper attempt to circumvent the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), and Massachusetts corresponding Uniform Arbitration Act for Commercial Disputes, Mass. Gen. L. c. 251, § 1 et seq. ("UAA"). These laws provide the *exclusive* means through which a party can petition a court to modify or vacate an arbitration award. See, e.g., Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 584 (2008) (grounds stated in FAA for vacating, modifying or correcting arbitration award constitute the exclusive grounds therefor); Katz, Nannis & Solomon, P.C. v. Levine, 473 Mass. 784, 789-90 (2016) (following Hall St. Assocs., L.L.C. and reaching same conclusion for UAA).

Thus, Plaintiffs' lawsuit to modify or vacate the Interim Award at issue is exclusively governed by the FAA and UAA. That Plaintiffs are now parties to the underlying arbitration, see Superior Court Order (Exh. 1), cements the conclusion that these laws provide the exclusive means through which Plaintiffs may seek to amend or alter the Panelists' awards.

In fact, under both the FAA and UAA, judicial review is limited to a "final award" before any challenge can be rendered. See 9 U.S.C. § 10; Mass. Gen. L. c. 251, § 12. Under this limited scope of review, "'[i]t is essential for the [trial] court's jurisdiction that the arbitrator's decision was final, not interlocutory.'" Hart Surgical, Inc. v. Ultracision, Inc., 244 F.3d 231, 233 (1st Cir. 2001) (quoting El Mundo Broad. Corp. v. United Steelworkers of America, AFL-CIO CLC, 116 F.3d 7, 9 (1st Cir.1997)); see also Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414 (2d

8

Cir.1980) ("[A trial] court should not hold itself open as an appellate tribunal during an ongoing arbitration proceeding, since applications for interlocutory relief result only in a waste of time, the interruption of the arbitration proceeding, and...delaying tactics in a proceeding that is supposed to produce a speedy decision.") (internal quotations omitted). Thus, even had Plaintiffs asserted a claim under FAA or the UAA (they did not), their attack on the Interim Award is interlocutory and improper.

Moreover, regardless of FAA/UAA exclusively, Plaintiffs stated "claims" against the Panelists – for "Declaratory Judgment" and "Injunctive Relief" (see Complaint at ¶¶ 96-101) – state no causes of action at all. Neither provides any basis whatsoever under statutory or common law for the "claims" asserted.

Yet, even had Plaintiffs invoked Massachusetts' declaratory judgment statute, Mass. Gen. L. c. 231A, § 1 et seq., (they did not), their claim would still be improper because there is no actual controversy between the parties. Declaratory relief requires: "that (1) there is an actual controversy; (2) [plaintiff] has standing; (3) necessary parties have been joined, and (4) available administrative remedies have been exhausted." School Committee of Hudson v. Board of Education, 448 Mass. 565, 579 (2007). In other words, declaratory judgment "proceedings are concerned with the resolution of real, not hypothetical, controversies." Galipault v. Wash Rock Investments, LLC, 65 Mass. App. Ct. 73, 84 (2005).

Here, Plaintiffs petition the Court because they are "[on] the verge of consummating a multimillion-dollar transaction." Complaint at ¶ 13. While the Trustee's withholding consent to the substitution of collateral may affect whether this agreement can be executed, the Trustee's reluctance does not amount to a live controversy between Plaintiffs and *the Panelists*. This conclusion is consistent with the cases cited above holding that arbitrators are not proper parties

9

to lawsuits involving an arbitration because they have no interest in the outcome. See, e.g., Aberele Hosiery Co., 337 F. Supp. at 92; Braidwood, 284 F. Supp. at 610.

Indeed, Plaintiffs explicitly allege that it is the "*the Trustee* [that] seeks guidance from the Court" about the transaction. Complaint at ¶ 22. Such Court-initiated "guidance" for the Trustee, who is only a "Nominal Defendant" to this lawsuit (and not a party to the arbitration), is plainly improper under the declaratory judgment statute, which "concerns the resolution of real, not hypothetical, controversies." Galipault, 65 Mass. App. Ct. at 84. Having asserted no viable claim, Plaintiffs cannot show a likelihood of success on the merits of their claim.

> **3. Plaintiffs fail to allege or establish that this Court has personal jurisdiction over the Panelists.**

Plaintiffs are also unlikely to succeed due to a lack of personal jurisdiction over the Panelists under Fed. R. Civ. P. 12(b)(2). Plaintiffs, who bear the burden, must allege specific facts to "satisfy two conditions: first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the structure of the Constitution." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995); see also Knox v. MetalForming, Inc., 914 F.3d 685, 689-90 (1st Cir. 2019) ("[T]he plaintiffs' burden is to proffer evidence sufficient to support findings of all facts essential to personal jurisdiction without relying on unsupported allegations.") (internal quotations omitted).

Here, the Complaint is devoid of any allegations that even address personal jurisdiction and for this reason alone the Court should deny an injunction. In fact, the Complaint affirmatively indicates a *lack* of personal jurisdiction, alleging that each of the Panelists has "a principle places of business" in Alaska, Washington and North Carolina, with no mention of any

contacts to Massachusetts whatsoever. Complaint ¶¶ 9-11. Neither does the Complaint indicate that the Panelists transact any business or contract for services to be provided in Massachusetts. See Mass. Gen. L. c. 223A, § 3 ("A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth [or] (b) contracting to supply services or things in this commonwealth…."). In short, this Court lacks personal jurisdiction over the Panelists and Plaintiffs make no claim otherwise.

To the extent that Plaintiffs attempt to argue (despite not pleading it) that the Court has personal jurisdiction by virtue of the Panelists' acting as arbitrators in a case involving Massachusetts entities, that argument fails.

> The Massachusetts long-arm statute permits the exercise of personal jurisdiction when a person has transacted business within the Commonwealth or when the person has contracted to supply services or things within the Commonwealth. This conferral of jurisdiction creates a specifically affiliating jurisdictional nexus; the personal jurisdiction conferred is only with respect to litigation arising out of the transaction within the Commonwealth, not with respect to the defendant's transactions that did not take place in the Commonwealth.

Evans Cabinet Corp. v. Kitchen Int'l, Inc., 593 F.3d 135, 146 (1st Cir. 2010) (internal footnote omitted).

Remotely arbitrating a dispute between Massachusetts entities constitutes neither "transacting business" – defined as "attempt[ing] to participate in the commonwealth's economic life," Cossart v. United Excel Corp., 804 F.3d 13, 18-19 (1st Cir. 2015) – nor "contracting for services" to be provided in Massachusetts. Indeed, the Panelists are experienced in federal fisheries law from around the country whom the parties presumably chose to serve as arbitrators because of this experience. See, e.g., Complaint ¶¶10-12; Exh. O. Application of this experience has nothing to do with the New Bedford, Massachusetts location of the entities before them, a

location with which the Panelists have no experience or connection. Under these circumstances, Massachusetts' long-arm statute does not subject the Panelists to personal jurisdiction. See Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997) (long-arm statue "is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party.").

Yet, even if the long-arm statute permitted it, the Court would still lack jurisdiction under the Due Process Clause of the Fourteenth Amendment. For the Court to exercise specific personal jurisdiction[5] over the Panelists consistent with the Due Process Clause, Plaintiffs must demonstrate that each of three conditions is satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must...be reasonable.

Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 60 (1st Cir. 2002) (quoting Foster-Miller, 46 F.3d at 144).

Suffice to say, the Complaint does not address any of these issues, which, in any event, Plaintiffs cannot satisfy. There is simply no indication of "relatedness," that is, "nexus between Defendants' forum-state activities and Plaintiff's cause of action," Ericson v. Conagra Foods, Inc., Civil Action No. 1:20-cv-11022-ADB, 2020 WL 6912105, *5 (D. Mass. Nov. 24, 2020), or "purposeful availment," that is, that the Panelists' purported contacts with Massachusetts are anything more than random, isolated, or fortuitous such that they should "reasonably anticipate

---

[5] There is absolutely no indication of contacts "'so continuous and systematic as to render [a person] essentially at home in the forum State'" that are required for general jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

being haled into court" here. Foreseeability requires that the contacts also must be of a nature that the defendant could "reasonably anticipate being haled into court there." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)); Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 245 (D. Mass. 2012) (internal citation omitted).

The "reasonableness" inquiry[6/] also weighs heavily against personal jurisdiction as the Panelists, individuals residing throughout the country, would be extremely burdened by litigating in Massachusetts, which has no strong interest in providing a forum for Plaintiffs, particularly so now that they are parties to the underlying arbitration. Indeed, that arbitration is plainly the most effective means for resolving the issues Plaintiffs' suit raises.

Overall, the relevant factors point to the conclusion that this Court's exercise of personal jurisdiction over the Panelists would be inconsistent with the long-arm statute and the Due Process Clause. Jurisdiction being improper, Plaintiffs cannot show a likelihood of success on the merits.

### B.   Plaintiffs Improperly Seek An Injunction That Would Alter, Not Maintain, The Status Quo And Is Untimely.

Plaintiff's Motion should also be denied because, rather than seeking to maintain the status quo, it improperly asks for a preliminary injunction to execute a presumably complex multimillion-dollar transaction that potentially effects the property rights of several parties. The

---

[6/] The First Circuit has identified the following "Gestalt factors" to guide the reasonableness inquiry: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Pritzker v. Yari, 42 F.3d 53, 63-64 (1st Cir. 1994) (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).

law is well-settled: "The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 48 F.3d 618, 620 (1st Cir. 1995) (citing Chalk v. United States Dist. Court, 840 F.2d 701, 704 (9th Cir. 1988)). In seeking an order that would alter the status quo, Plaintiff's motion runs counter to this purpose.

Plaintiffs' Motion is also untimely. The Interim Award Plaintiffs attack was issued in October of 2019, near 16 months before the Plaintiffs' filed their Complaint and "emergency" Motion. The unreasonable delay in bringing suit – often defined as "laches" – "bars assertion of a claim where a party's delay in bringing a suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party" in defending the claims. K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 911 (1st Cir.1989); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, Civil, § 2946, at 113 (1995).

Here, Plaintiffs no make argument for injunctive relief that could not have been made 16 months ago. And their delay is prejudicial. Plaintiff presses the Panelists on the eve of the start of the fishing season, claiming the need for emergency relief, all to the detriment of the Panelists' performance of the job before them – that is, moving forward with and resolving the arbitration. Based on the status quo and timeliness alone, the Court should deny Plaintiffs' Motion.

  **C. Plaintiffs Show No Irreparable Harm.**

"[I]rreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). Irreparable harm is grounded in more than "conjecture, surmise, or a party's unsubstantiated fears" and there must be no adequate legal remedy available to the petitioning

14

party. Id. An injury will only be considered irreparable if no adequate remedy for the injury exists at law. See Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir. 1986); see also *Federal Practice and Procedure* § 2948.1, at 149-51. Monetary damages are generally not considered irreparable injuries. DeNovellis v. Shalala, 135 F.3d 58, 64 (1st Cir. 1998) ("[A] temporary loss of income which may be recovered later does not usually constitute irreparable injury."); see also Tri-Nel Mgmt., Inc. v. Bd. Of Health of Barnstable, 433 Mass. 217, 227 (2001) ("Economic harm alone, however, will not suffice as irreparable harm unless 'the loss threatens the very existence of the movant's business.'") (quoting Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 399 Mass. 640, 643 (1987)).

Here, Plaintiffs fail to establish the necessary irreparable harm necessary for the requested relief. Rather, they assert only money damages – the multimillion dollar transaction the Interim Award purportedly prevents. A preliminary injunction "is a potent weapon that should be used only when *necessary* to safeguard a litigant's legitimate interests" and monetary damages alone are insufficient grounds for preliminary injunction. Blinds To Go, Inc., 370 F.3d at 163 (emphasis added); see also Tri-Nel Mgmt., 433 Mass. at 227. The Court should therefore deny an injunction.

### D. Neither The Equities Nor The Public Interest Weigh In Favor Of An Injunction.

Finally, Plaintiffs wholly fail to show that the balance of the equities weighs in their favor or that an injunction in the public interest. Most clearly, in the FAA, Congress has declared a strong national policy favoring arbitration. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995). Similarly, Massachusetts' UAA "express[es] a strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial

15

disputes." Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc., 403 Mass. 772, 774 (1989), quoting Danvers v. Wexler Constr. Co., 12 Mass.App.Ct. 160, 163 (1981).

In awarding a preliminary injunction a court must also "conside[r]... the overall public interest." Trump v. Int'l Refugee Assistance Project, 137 S. Ct. 2080, 2087 (2017) (quoting Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 26 (2008) and citing *Federal Practice and Procedure* § 2948. The strong public policy favoring arbitration weighs against court intervention in a case that is otherwise subject to arbitration. See, e.g., Powershare, Inc. v. Syntel, Inc., 597 F. 3d 10, 15 (1st Cir. 2010) ("[F]ederal law undeniably includes a policy favoring arbitration."). Further aligned with the national policy in favor of arbitration is the doctrine of arbitral immunity which, as noted, "is essential to protect decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants." New England Cleaning Services, Inc., 199 F.3d at 545.

Given these principles, Plaintiffs do not and cannot show that the equities of a preliminary injunction against arbitrators in an ongoing arbitration that would purport to limit the scope and meaning of an award entered in that arbitration weighs in their favor. Nor can Plaintiffs show that such an injunction would be in the public interest, which is the promotion and protection of arbitration and arbitrators. The Motion should be denied.

## CONCLUSION

For all of the foregoing reasons, Defendant Panelists respectfully request that the Court deny the Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

MARK C. MANNING, ROBERT J. BOCKO,
STEVENSON L. WEEKS, as PANELISTS

By their attorneys,

/s/*John M. Simon*
Kay H. Hodge (BBO# 236560)
   khodge@scmllp.com
John M. Simon (BBO# 645557)
   jsimon@scmllp.com
Justin R. Gomes (BBO# 699042)
   (USDC application pending)
   jgomes@scmllp.com
Stoneman, Chandler & Miller, LLP
99 High Street
Boston, MA 02110
(617) 542-6789

Dated: May 10, 2021

Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent by first class mail, postage prepaid, to those indicated as non-registered participants on May 10, 2021.

/s/*John M. Simon*
John M. Simon