UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHAMROCK FISHERIES, LLC, KINEO FISHERIES, LLC, MARINER FISHERIES, LLC, SEAFARER FISHERIES, LLC, CYNBEL FISHERIES, LLC, TORBAY FISHERIES, LLC, GALWAY FISHERIES, LLC, QUINN FISHERIES, LLC, BLUE HARVEST FISHERIES, LLC, | * * * * * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 21-cv-10689-ADB |
| MARK C. MANNING, ROBERT J. BOCKO, STEVENSON L. WEEKS, | * * * | |
| Defendants, and | * * | |
| HON. LLOYD MACDONALD, as Trustee, | * * | |
| Nominal Defendant. | * * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Shamrock Fisheries, LLC; Kineo Fisheries, LLC; Mariner Fisheries, LLC; Seafarer Fisheries, LLC; Cynbel Fisheries, LLC; Torbay Fisheries, LLC; Galway Fisheries, LLC; Quinn Fisheries, LLC; and Blue Harvest Fisheries, LLC (collectively "Plaintiffs") brought suit against arbitrators Mark C. Manning, Robert J. Bocko, and Stevenson L. Weeks, (collectively "Panelist Defendants") alleging that their actions have prevented a multi-million-dollar transaction from closing. [ECF No. 1-1 at 10–28 ("Compl.")]. Plaintiffs seek declaratory and injunctive relief and have also moved for a preliminary injunction. [Compl.; ECF No. 1-1 at 3–7]. The Panelist Defendants have moved to dismiss. [ECF No. 5]. For the reasons set forth below, the Panelist

Defendants' motion to dismiss is GRANTED and Plaintiffs' motion for a preliminary injunction is DENIED.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiffs are nine different fisheries, eight of which have principal places of business in New Bedford, Massachusetts. [Compl. ¶¶ 1–8].[2] With the exception of Blue Harvest Fisheries, LLC ("Blue Harvest"), the fisheries are collectively referred to as the "Quinn Entities." [Id. at 1]. The Quinn Entities and Blue Harvest want to close a multi-million-dollar transaction that would transfer vessels and fishing permits between the Quinn Entities and Blue Harvest (the "Transaction"). [Id. ¶ 13]. According to Plaintiffs, the Transaction has been stymied because of awards the Panelist Defendants issued while presiding over an arbitration that was initially between several non-parties in this case, including Carlos Rafael and his affiliated fishing companies (the "Rafaels"), BASE, Inc. ("BASE"), and VII Northeast Fishery Sector Inc. ("Sector VII").[3] [Id. ¶¶ 16–30, 87–92, 94–95; ECF No. 1-1 at 350–64].

---

[1] The allegations laid out in the complaint, and the 300 pages of supporting documents referenced therein, are complex, span several years, and involve many non-parties. For the purposes of this Order, the Court assumes the parties' familiarity with the underlying facts and recites only the facts necessary to resolve the pending motions.

[2] The complaint does not allege Quinn Fisheries, LLC's principal place of business.

[3] The National Marine Fisheries Service manages fishing species through the use of "Sectors." [Compl. ¶ 31]. Persons or entities enrolled in a sector can buy and sell federal fishing permits and are subject to conditions contained in sector membership and/or operating agreements. [Id. ¶ 32]. Sector VII is an approved sector that encompasses fishing permits in the New Bedford, Massachusetts area. [Id. ¶ 33].

1.      The Underlying Arbitration

In 2016, the National Oceanic and Atmospheric Administration ("NOAA") initiated a civil enforcement action against Carlos Rafael. [Compl. ¶ 44]. NOAA and the Rafaels eventually reached a settlement agreement in August 2019, and the Rafaels were ordered to divest their commercial fishing vessels and permits in a NOAA-approved sale by December 31, 2020. [Id. ¶¶ 52–53]. As part of the settlement agreement, the Rafael Settlement Trust was formed to hold the Rafaels' assets. [ECF No. 1-1 at 32]. The Nominal Defendant in this action, the Honorable Lloyd MacDonald (the "Trustee"), serves as the trustee of the Rafael Settlement Trust. [Id.; Compl. ¶ 12].

As a result of the NOAA action, the Quinn Entities and the Rafaels entered into a contingency agreement for the sale of seven of the Rafaels' commercial fishing vessels and permits. [Compl. ¶ 67]. On September 18, 2019, BASE initiated arbitration against the Rafaels and Sector VII asserting that, pursuant to an agreement governing New Bedford area fisheries, it has a right of first refusal to the assets that the Rafaels were in the process of selling to the Quinn Entities. [Id. ¶¶ 72–76, 87–89; ECF No. 1-1 at 350–64]. The Panelist Defendants were selected to preside over that arbitration. [ECF No. 1-1 at 190 (showing the Panelist Defendants as arbitrators)]. On September 24, 2019, while the arbitration was pending, the Rafaels and the Quinn Entities completed the sale of the assets. [Compl. ¶ 81].

On October 25, 2019, the Panelists Defendants issued an interim award that prohibited the Rafaels from further selling or changing the status of their assets and also directed the Rafaels to instruct their agents or trustees to do the same (the "Interim Award"). [ECF No. 1-1 at 192–94; ECF No. 7-2 ¶¶ 3(a)–(f)]. The Panelists Defendants issued another order on February 25, 2021, which reiterated the Rafaels' obligation to instruct its trustees not to change the status

of any assets. [ECF No. 1-1 at 189–90]. On or around March 4, 2021, the Rafaels' attorney sent notice of the Interim Award and February 25, 2021 order to the Trustee and advised the Trustee not to "transfer, spend, distribute, invest, or otherwise change the present status" of certain assets held by the Rafael Settlement Trust. [Compl. ¶ 94; ECF No. 1-1 at 186].

Neither Plaintiffs nor the Trustee were parties to the arbitration when the Interim Award was issued. [Compl. ¶ 29]. However, on May 3, 2021, after this suit was filed, a judge in Suffolk County Superior Court issued an order compelling seven of the eight Quinn Entities to participate in the underlying arbitration between BASE, the Rafaels, and Sector VII. [ECF No. 7-1 at 1].

2.      Transaction between the Quinn Entities and Blue Harvest

As the arbitration proceeds, Plaintiffs have been attempting to complete the Transaction, which was originally scheduled to close on April 16, 2021. [Compl. ¶¶ 14, 16]. The assets that the Quinn Entities want to transfer to Blue Harvest are subject to mortgages and security interests in favor of the Rafael Settlement Trust and another non-party bank. [Id. ¶ 18]. Due to those mortgages and security interests, both the bank and the Trustee need to consent to the transfer of the assets from the Quinn Entities to Blue Harvest. [Id. ¶ 20]. The non-party bank has consented to the transfer, but the Trustee has not. [Id. ¶¶ 21–22]. According to Plaintiffs, the Trustee interprets the February 25, 2021 order, which discusses the Interim Award, as prohibiting him from undertaking the necessary steps to allow the Transaction to close and the Trustee "seeks guidance" from the Court before allowing the Transaction to proceed. [Id. ¶¶ 22, 95]. Because some of the permits to be exchanged in the Transaction are for fishing seasons that commenced on May 1 or on June 1, 2021, Plaintiffs allege that they will experience serious and irreparable financial harm if the transaction does not close immediately. [Id. ¶ 17].

### B.     Procedural History

On April 19, 2021, Plaintiffs filed this lawsuit in Bristol County Superior Court. [Compl. at 28]. The two-count verified complaint requests that the Court declare, among other things, that Plaintiffs and the Trustee are not subject to the jurisdiction of the American Arbitration Association ("AAA") or the arbitration, that Plaintiffs and the Trustee are not bound by the Panelist Defendants' orders, and that the Panelist Defendants have "no jurisdiction to direct or restrain the Trustee in the exercise of his fiduciary duties" (Count I). [Compl. ¶¶ 96–98]. Plaintiffs also seek injunctive relief prohibiting the Panelist Defendants, the Rafaels, and BASE "from interfering with the Trustee's exercise of his fiduciary duties" and instructing "the Trustee on the contemplated substitution of collateral," which would allow the Transaction to close (Count II). [Id. ¶¶ 99–101].

Along with the complaint, Plaintiffs also filed a motion for a temporary restraining order and preliminary injunction (the "motion for a preliminary injunction"). [ECF No. 1-1 at 3–8, 368–373]. The motion for a preliminary injunction asks the Court to 1) enjoin the Panelist Defendants from "interfering with the Trustee's exercise of his fiduciary duties or issuing any Order or Award that interferes with the" Transaction; and 2) instruct the Trustee that he is "authorized to execute any documents necessary to" allow the Transaction to close. [Id. at 373].

The Panelist Defendants removed the case to this court on April 26, 2021. [ECF No. 1]. They opposed the motion for a preliminary injunction and filed their motion to dismiss on May 10, 2021. [ECF Nos. 5, 7]. Plaintiffs filed their opposition to the motion to dismiss and reply in support of the motion for a preliminary injunction on May 26, 2021. [ECF No. 15]. The Panelist Defendants filed their reply in support of the motion to dismiss on June 11, 2021. [ECF No. 17]. The Court held a hearing on June 16, 2021, where the parties informed the Court that a

mediation may resolve some of the issues in this case. [ECF No. 19]. On August 6, 2021, the parties filed a status report stating that the mediation had not resolved any of the underlying issues and that the pending motions were ripe for disposition. [ECF No. 21].

## II. PANELIST DEFENDANTS' MOTION TO DISMISS

### A. Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need

not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).

   B.   Discussion

The Panelist Defendants argue that the complaint must be dismissed because they are protected by arbitral immunity and, in any event, they are not proper parties to this suit because they are not interested in its outcome.[4]  [ECF No. 6 at 4–6; ECF No. 17 at 2–4, 6–8].

Courts, including the First Circuit, "consistently have extended quasi-judicial immunity to arbitrators and organizations that sponsor arbitrations."  Lanza v. Fin. Indus. Regul. Auth., 953 F.3d 159, 163 (1st Cir. 2020).  "In general terms, arbitral immunity covers all acts within the scope of the arbitral process," and its purpose "is to protect decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants."  Id. (citations and internal quotation marks omitted).  The doctrine, however, is "not impervious to all incursions," and cannot shield an arbitrator who acts in "the absence of any colorable claim of jurisdiction."  Id. at 164; see also New England Cleaning Servs., Inc. v. Am. Arb. Ass'n, 199 F.3d 542, 545–46 (1st Cir. 1999) ("Judicial immunity applies, however, unless there is a 'clear absence' of jurisdiction. . . . We see no reason not to adopt the same parameter for arbitral immunity.").

---

[4] The Panelist Defendants have also argued that the Court lacks personal jurisdiction over them, [ECF No. 6 at 8–14], and that Plaintiffs are attempting to circumvent the Federal Arbitration Act, which provides the exclusive means for modifying or vacating an arbitration award, [id. at 6–8].  Because the Court dismisses the complaint on the basis of arbitral immunity, it does not reach these other arguments.

7

An arbitrator's decision to determine their own jurisdiction and issue awards is squarely part of the arbitral process and therefore protected by arbitral immunity. See Tamari v. Conrad, 552 F.2d 778, 780–81 (7th Cir. 1977); Cherdak v. Am. Arb. Ass'n Inc., 443 F. Supp. 3d 134, 155 (D.D.C. 2020) ("Typically, arbitral immunity has been applied in cases when plaintiffs challenge the authority of an arbitrator to resolve a dispute."); see also Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith, 477 F.3d 1155, 1159 (10th Cir. 2007) (holding that the "key question" in applying arbitral immunity "is whether the claim at issue arises out of a decisional act"). In Tamari v. Conrad, the plaintiffs, who were parties to an underlying arbitration, sued eight arbitrators, to challenge their authority to hear the case because they were not selected in accordance with the relevant arbitration agreement. 552 F.2d at 780. The Seventh Circuit concluded that arbitral immunity covered challenges to an arbitrator's authority to resolve a dispute and noted that

> individuals such as [the arbitrator defendants] cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit. Defendants have no interest in the outcome of the dispute between [plaintiffs and the opposing party in the arbitration], and they should not be compelled to become parties to that dispute.

Id. at 780–81.

The Seventh Circuit also explained that the plaintiffs were not without recourse because in due time they could challenge enforcement of the award or ask a court to set it aside as invalid, "[b]ut in any event, the burden of meeting those contentions will fall upon [the opposing party in the underlying arbitration], which is [plaintiffs'] real adversary, rather than upon the [defendant arbitrators]." Tamari, 552 F.2d at 781.

Here, Plaintiffs contend that the Panelist Defendants exceeded their jurisdiction and that arbitral immunity does not apply because the Interim Award directs the actions and affects the rights of non-parties (i.e., the Trustee). [ECF No. 15 at 5–9]. Despite trying to frame it

differently, Plaintiffs are, in effect, challenging the Panelist Defendants' power to determine their own jurisdiction and issue awards. In essence, Plaintiffs argue that the Panelist Defendants misinterpreted the scope of their authority and came to the wrong legal conclusions when they issued the Interim Award, and should be enjoined from doing so in the future. This conduct is plainly within the scope of the arbitral process and is protected by arbitral immunity.

Plaintiffs rely heavily on First Circuit precedent that holds that there is no immunity if the arbitrator acts with "a 'clear absence' of jurisdiction" and attempt to fit the facts of this case into that exception. [ECF No. 15 at 6 (quoting New England Cleaning Servs., Inc.,199 F.3d at 545)]. The caselaw, however, does not support the broad proposition, urged by the Plaintiffs, that a purported error in an arbitrator's legal analysis equates to an action taken in the absence of any jurisdiction. In New England Cleaning Services, the First Circuit explained that arbitral immunity does not apply in the absence of jurisdiction, but ultimately held that arbitral immunity protected an arbitral organization's decision to process a facially valid arbitration demand against a maintenance company, even though it was later determined that there was no arbitration agreement and that the maintenance company could not be compelled to arbitrate. 199 F.3d at 546. The First Circuit reasoned that the arbitration demand was not so deficient on its face that it could be said that there was a clear absence of jurisdiction. Id. Notably, the First Circuit did not explicitly hold, or even suggest, that an arbitrator's erroneous interpretation of an arbitration agreement or the governing law would preclude the application of arbitral immunity.[5]

---

[5] The Seventh Circuit has reached a similar result. In Int'l Med. Grp., Inc. v. Am. Arb. Ass'n, Inc., the plaintiff argued that it was not a party to the relevant arbitration agreement and claimed that the AAA acted "in the clear absence of jurisdiction" and "engaged in tortious conduct by asserting jurisdiction" over it. 312 F.3d 833, 842 (7th Cir. 2002). The Seventh Circuit disagreed with plaintiff's argument and held that arbitral immunity protected the AAA. Id. at 844.

9

Here, even if the Court were to find that the Panelist Defendants incorrectly determined the scope of their jurisdiction or that the Interim Award is invalid, the Panelist Defendants' actions are not so obviously erroneous that the Court could or would find they were taken without any colorable claim of jurisdiction. The plain language of the Interim Award only orders the Rafaels to instruct their trustees and other agents to not sell or transfer assets. [ECF No. 7-2 at 2]. It does not explicitly exercise jurisdiction over the non-parties or impose any penalties on the non-parties if they do not comply.

Additionally, the facts of this case are distinct from the hypothetical situations where courts have indicated that arbitrators would not be immune. For example, the First Circuit explained that immunity would likely not attach to an arbitrator's decision to accept a bribe. Lanza, 953 F.3d at 164. The Seventh Circuit theorized that immunity would be inapplicable to situations where an arbitrator accepts payment for an arbitration, pockets the funds, and then refuses a refund when the arbitration is not performed. Int'l Med. Grp., Inc. v. Am. Arb. Ass'n, Inc., 312 F.3d 833, 844 (7th Cir. 2002). In those situations, unlike here, the challenged action was distinct from the underlying dispute or arbitrability, and the claims could be stated "entirely without reference to the arbitration." Id. ("The claim that one may not retain a payment for services that are never rendered can be stated entirely without reference to the arbitration."). In contrast, Plaintiffs' claims against the Panelist Defendants hinge on a finding that the substance of the Interim Award was legally erroneous and are closely tied to the underlying arbitration.

Tellingly, Plaintiffs have cited to no case where a court held that arbitrators should be enjoined because they issued an award directing the actions of a non-party or did not have jurisdiction to decide an issue. Plaintiffs cite to Nationwide Mut. Ins. Co. v. Home Ins. Co., 330 F.3d 843, 846–47 (6th Cir. 2003) for the proposition that an arbitrator cannot bind a non-party to

an arbitration. [ECF No. 15 at 7–8]. In that case, the Sixth Circuit reversed an arbitral award that determined the rights and obligations of non-parties to an arbitration agreement. Nationwide Mut. Ins. Co, 330 F.3d at 847–48. The remedy, however, did not include enjoining the arbitrator's conduct and the arbitrator was not even a party to the lawsuit. The same can be said for every other case that Plaintiffs cite in support of their argument that an arbitrator cannot bind a non-party or grant relief beyond the scope of an arbitration agreement. See AT & T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643 (1986); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995); NORCAL Mut. Ins. Co. v. Newton, 100 Cal. Rptr. 2d 683 (Cal. App. 1st Dist. 2000); Buckner v. Tamarin, 119 Cal. Rptr. 2d 489 (Cal. App. 2nd Dist. 2002); Royal Indem. Co. v. Blakely, 360 N.E.2d 864 (Mass. 1977); Loc. 589, Amalgamated Transit Union v. Massachusetts Bay Transp. Auth., 467 N.E.2d 87 (Mass. 1984); Plymouth-Carver Reg'l Sch. Dist. v. J. Farmer & Co., 553 N.E.2d 1284 (Mass. 1990); Hebbronville Lone Star Rentals, L.L.C. v. Sunbelt Rentals Indus. Servs., L.L.C., 898 F.3d 629 (5th Cir. 2018). While the Court understands that Plaintiffs may not have known whom to sue to obtain the relief that they seek and is sympathetic to that dilemma, these cases make clear that the Panelist Defendants are not the correct parties to sue here.

Finally, dismissal is also appropriate for another reason: the Panelist Defendants are not real parties in interest. See Lanza, 953 F.3d at 164 (indicating that in some cases the real issue may be whether the arbitrator even has an interest in the proceeding rather than whether immunity applies). Arbitrators should not be required to litigate disputes when they have no real interest in the outcome. Conner v. Am. Arb. Ass'n, 310 F. App'x 611, 612 (4th Cir. 2009) ("When stripped of its hyperbole, [appellant's] Complaint is a clear-cut attempt to appeal the adverse arbitration Award. As such, the AAA Appellees are correct in their position that they

11

are not indispensable, necessary, or proper parties to the litigation."); Glob. Gold Min., LLC v. Robinson, 533 F. Supp. 2d 442, 448 (S.D.N.Y. 2008) ("The real parties in interest to litigate the question of arbitrability are the parties seeking and resisting arbitration, not the arbitrators or arbitral administrators, whose role is solely to render neutral judgment."); Chicago Reg'l Council of Carpenters v. Resnick, 215 F. Supp. 3d 698, 706 (N.D. Ill. 2016) ("[A] claim intended to determine whether an arbitral body has the authority to proceed is one in which the arbitral body has no real interest." (citation omitted)).

Plaintiffs' ultimate goal is to close the Transaction, which they cannot do absent the Trustee's consent. In an effort to achieve this goal, Plaintiffs have sued the Panelist Defendants to prohibit them from interfering with the Trustee's fiduciary duties and exercising his rights. But because the Panelist Defendants have no interest in the outcome of this dispute, which turns on an analysis of the Trustee's rights and the reach of the Interim Award, they are not proper parties to the litigation.

In sum, because they are protected by arbitral immunity and have no interest in the dispute, the Panelist Defendants' motion to dismiss is GRANTED.

### III. PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

#### A. Legal Standard

The granting of a preliminary injunction is "an 'extraordinary and drastic remedy' . . . that 'is never awarded as of right.'" Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689–90 (2008)). When deciding whether to grant a motion for preliminary injunction, courts must consider four factors:

> (i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld;

>(iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest.

Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). As the moving party, Plaintiffs bear the burden of satisfying each of these four elements. See Nieves–Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).

The First Circuit has held that these four factors "are not entitled to equal weight in the decisional calculus." Corp. Techs., 731 F.3d at 9. Rather, the movant's likelihood of success on the merits "is the main bearing wall of the four-factor framework." Id. at 10 (quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996). "[P]roving likelihood of success on the merits is the 'sine qua non' of a preliminary injunction." Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 173 (1st Cir. 2015) (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)). Therefore "[i]f the moving party cannot demonstrate that [it] is likely to succeed in [its] quest, the remaining factors become matters of idle curiosity." Id. (quoting New Comm Wireless Servs., 287 F.3d at 9).

### B. Discussion

For the reasons discussed supra, the Panelist Defendants are protected by arbitral immunity, and Plaintiffs are therefore unlikely to succeed on the merits of any of their claims against those Defendants. As noted above, "proving likelihood of success on the merits is the 'sine qua non' of a preliminary injunction." Arborjet, Inc., 794 F.3d at 173 (quoting New Comm Wireless Servs., 287 F.3d at 9). Because Plaintiffs have not satisfied that factor for the Panelist Defendants, the Court will not analyze the remaining factors other than to note that Plaintiffs, relying only on the bare allegation in their complaint, have failed to substantiate their claim that they will suffer irreparable financial harm if their injunction is not granted.

To the extent the Plaintiffs are requesting that the Court enter an order instructing the Trustee, a nominal defendant, about what he can properly do, or asking the Court for guidance on behalf of the Trustee, Plaintiffs have failed to adequately brief that issue.  [Compl. ¶ 22 (complaint stating that "[t]he Trustee seeks guidance from this Court"); ECF No. 15 at 10 (Plaintiffs' brief summarizing request as "seek[ing] a declaration that the [Panelist Defendants] cannot exercise [their] authority over a non-party, namely, Hon. Lloyd MacDonald," but failing to detail the legal basis for the Court's authority to determine the nominal defendant's rights)].  Accordingly, Plaintiffs have failed to show that their claims relating to the Trustee's rights and/or conduct are likely to succeed.

In sum, because Plaintiffs have not shown that they are likely to succeed on the merits of any of their claims for declaratory or injunctive relief, their motion for a preliminary injunction is DENIED.

## IV.    CONCLUSION

Accordingly, the Panelist Defendants' motion to dismiss, [ECF No. 5], is GRANTED and Plaintiffs' motion for a preliminary injunction is DENIED.  Plaintiffs are to appear for a status conference before the Court on January 6, 2022 at 9:30 a.m.

**SO ORDERED.**

December 7, 2021                                                               /s/ Allison D. Burroughs
                                                                               ALLISON D. BURROUGHS
                                                                               U.S. DISTRICT JUDGE